## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

_____

| | | |
|---|---|---|
| RUSSELL WRIGHT | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. _____ |
| | § | JURY DEMANDED |
| U.S. FARATHANE | § | |
| CORPORATION | § | |
| | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

COMES THE PLAINTIFF, **RUSSELL WRIGHT**, filing this Complaint against **U.S. FARATHANE CORPORATION.**  He shows:

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff, RUSSELL WRIGHT, is a citizen and resident of Giles County, Tennessee.

2.     Defendant, U.S. FARATHANE CORPORATION, is a foreign corporation (Michigan) operating in Madison County, Tennessee where it briefly employed the Plaintiff.

3.     This Court has subject matter jurisdiction under 28 U.S.C. §1332

(diversity of citizenship) because the parties are "citizens" of different states and the amount in controversy exceeds $75,000.

4.      Venue in this Western District of Tennessee, Eastern Division, is proper pursuant to 28 U.S.C. 1391, because the Defendant was either doing business in this district or resides in this district, and a substantial part of the events or omissions giving rise to this action occurred in this district.

## FACTUAL BASES FOR SUIT

5.      In December of 2011, Defendant recruited Plaintiff for the position of Quality Manager.  Defendant advised Plaintiff that its current Quality Manager was leaving for a position in Texas, and that Plaintiff would be needed as soon as possible in Jackson, Tennessee.  According to Defendant, Plaintiff would be managing Defendant's Quality Staff and working on existing quality issues.

6.      On short notice, Plaintiff drove nearly 400 miles from Cleveland, Georgia to Jackson, Tennessee to interview on a Saturday, December 27, 2011, with Defendant's Vice President of Operations, Mr. Eric White from Michigan.

7.      In the interview, Plaintiff disclosed that, in possibly taking the position with Defendant in Jackson, Tennessee, he would be forfeiting a strong position in Georgia, where he was currently employed, paying him

nearly $100,000 annually.  Therefore, it was critical for Plaintiff to understand about job security.

8.     Defendant's Vice President stated that he appreciated those concerns.  He responded that Defendant has many long term employees, that the "quality system" was not in good standing, that it was a long term project with the quality manager playing a key role, that Defendant had much general manager turnover so employment stability with managers was very important, and that quality manager would be a key role with respect  to significant new business being awarded to the plant.  In sum, Defendant's Vice President gave every indication that the position was secure, long term, and, assuming Plaintiff met the performance standards, would be stable for him.

9.     Defendant's human resources officer sent Plaintiff a written offer letter the day after the interview, December 28, 2011.  This letter stated that its purpose was to "to confirm our discussion regarding your future employment" (wherein Defendant had made the various statements about job security the day before in response to Plaintiff's concerns about leaving a nearly $100,000 job).  The letter also stated that the letter was <u>not</u> a contract, but then it stated that Plaintiff <u>was</u> bound by the rules of at will employment.

10.     Satisfied with, and relying upon, the representations Defendant

made about strategy and stated role for Plaintiff during the interview process, Plaintiff resigned his job in Georgia and accepted the Quality Manager job with Defendant in Jackson, Tennessee.  Plaintiff's starting salary with Defendant was to be $86,000 over a whole year, paid every other week ("biweekly") in the amount of $3,307.69.  Plaintiff was to report to the General Manager.

11.     Plaintiff began working for Defendant, in Jackson, Tennessee, on or about January 10, 2012.

12.     After he was hired, Defendant brought in a new general manager.  This new general manager—who was not involved in Plaintiff's hiring—expressed misgivings about Plaintiff's age (52).  Defendant's general manager questioned whether Plaintiff had the "energy," as a quality manager, to accomplish the tasks needed.

13.     In truth, Plaintiff has no problem with his "energy" levels. Plaintiff is a strong communicator, motivated, dedicated, and otherwise very energetic.  Defendant was simply stereotyping Plaintiff because of his age.

14.     Only two weeks after being hired, Defendant's general manager terminated Plaintiff's employment.  Defendant refused to state the true reason for Plaintiff's termination (his age), and instead would only state on a separation notice:  "Exercised at will employment rights."  Defendant

retained the previous quality manager in Jackson (who was substantially younger than Plaintiff).

15.     Whether Plaintiff is "at will" or not, Tennessee law prohibits false representations to <u>induce</u> the employment of a person from one state to another. 1  Plaintiff relied to his detriment on false claims by Defendant of the "kind and character of work to be done," resigning his nearly $100,000 per year job in Georgia.  Thus, through Defendant's actions of falsely inducing his hire through promises suggesting long term stability, and then terminating Plaintiff within two weeks because of his age, Plaintiff lost *two jobs*—the one on Georgia as well as the one in Tennessee.

16.     Whether Plaintiff is "at will" or not, Defendant may not terminate his employment because of his age.  Tenn. Code Ann. §4-21-101(a)(3), (b).

17.     Defendant's actions, above, have taken a severe toll upon Plaintiff, causing him worry, financial distress, anxiety, and fear.  Literally,

---

1       **False or deceptive representations in procuring employees**. (a) (1) It is unlawful for any person to induce, influence, persuade or engage workers to change from one place to another in this state, or to bring workers of any class or calling into this state to work in any type of labor in this state through or by means of false or deceptive representations, false advertising or false pretenses, concerning the kind and character of the work to be done, or the amount and character of compensation to be paid for the work, or the sanitary or other conditions of the employment, or as to the existence or nonexistence of a strike or other trouble pending between employer and employees, at the time of or prior to the engagement.

Tenn. Code Ann. § 50-1-102.

Defendant lured Plaintiff away from a nearly $100,000 job he enjoyed and, in exchange, he was given two weeks of work and then terminated.  He seeks appropriate and significant compensatory damages along with all lost wages (back pay and front pay) and his attorneys fees and costs.

## CAUSES OF ACTION

18.     Plaintiff brings the following causes of action under Tennessee Code Ann. 4-21-101 et. seq. against Defendant:

> A.     <u>False and Deceptive Representations of Employment under Tenn. Code Ann.  § 50-1-102;</u> and
>
> B.     <u>Age Discrimination Under the Tennessee Human Rights Act, Tenn Code Ann. §4-21-101 et. seq.</u>

19.     Plaintiff demands a jury.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF requests Defendant Answer this Complaint, that Plaintiff be Awarded all compensatory damages available, any other equitable relief, wage and benefit losses, attorneys fees, costs, prejudgment interest and post-judgment interest, and any further relief at either law or equity to which he may be entitled.

Respectfully submitted,

**GILBERT RUSSELL McWHERTER PLC**

/s Justin S. Gilbert
Justin S. Gilbert (TN Bar No. 017079)
Jonathan L. Bobbitt (TN Bar No. 023515)
Jessica F. Salonus (TN Bar No. 28158)
101 North Highland
Jackson, TN 38301
Telephone: 731-664-1340
Facsimile: 731-664-1540
jgilbert@gilbertfirm.com
mrussell@gilbertfirm.com
jbobbitt@gilbertfirm.com

ATTORNEYS FOR PLAINTIFF